No. 98,442

STACY LEE KUXHAUSEN, *Appellant,* v. TILLMAN PARTNERS, L.P.,
*Appellee.*

(241 P.3d 75)

Opinion filed October 15, 2010.

*James L. Wisler*, of Wisler Law Offices, of Lawrence, argued the cause and was on the briefs for appellant.

*Jacqueline M. Sexton*, of Foland, Wickens, Eisfelder, Roper & Hofer, P.C., of Kansas City, Missouri, argued the cause, and *Joseph J. Roper*, of the same firm, was with her on the briefs for appellee.

*Derek S. Casey*, of Prochaska, Giroux and Howell, of Wichita, was on the brief for *amicus curiae* Kansas Association for Justice.

The opinion of the court was delivered by

ROSEN, J.: Stacy Lee Kuxhausen seeks review of a decision of the Court of Appeals affirming the district court's summary judgment order dismissing her personal injury action against Tillman Partners, L.P. See *Kuxhausen v. Tillman Partners*, 40 Kan. App. 2d 930, 197 P.3d 859 (2009). Kuxhausen contends that the district court (1) should have allowed expert testimony that she suffers from multiple-chemical sensitivity, a controversial diagnosis, as a result of Tillman Partners' actions and (2) erred in concluding that she had no admissible expert testimony on causation and dismissing her action against the defendants. Because our decision on the second issue is dispositive of this appeal, we do not reach the first.

The Court of Appeals opinion sets forth the facts and its findings as follows:

"When Stacy Kuxhausen reported for work at an accounting firm on a Monday morning in Manhattan, Kansas, she smelled paint and began to feel ill within minutes of entering the building. She said that her eyes burned, that she started to get a sore throat, and that she had to take deep breaths to get enough air. She later learned that epoxy-based paints had been applied in the basement of the building on the preceding Friday and Saturday. Kuxhausen came back to the building twice more over the next few days but stayed for only a few hours each time. She estimated that she spent a total of 8 hours in the building after it had been painted.

"Kuxhausen claims that she now has an ongoing sensitivity to a variety of chemicals she encounters in her daily life. She has sued the building owners, claiming

that all of this is due to her exposure to paint fumes on either that Monday morning in 2004 or on the two later visits. She sought damages of about $2.5 million.

"In support of her claim, Kuxhausen presented a medical doctor's testimony that she suffers from what that doctor and some others call multiple-chemical sensitivity. But most medical authorities say that multiple-chemical sensitivity is not a recognized diagnosis, and the district court ruled that the expert testimony Kuxhausen sought to present wasn't sufficiently reliable to be admitted in a Kansas court. And without expert testimony, Kuxhausen has no claim because it's certainly not self-evident to a layperson that a relatively brief exposure to paint fumes may lead to permanent sensitivity to a variety of chemicals.

"The district court's ruling that expert testimony was needed for Kuxhausen to proceed with her claim was not appealed. So Kuxhausen's claim rests upon the admissibility of her expert's testimony. Specifically, we must determine whether evidence about multiple-chemical sensitivity is admissible under Kansas law and whether, aside from that specific diagnosis, the district court properly excluded the doctor's testimony that Kuxhausen's ongoing problems were caused by her exposure to epoxy-paint fumes. Because Kansas law does not allow for expert opinions drawn from scientific principles that have not earned general acceptance, the district court properly excluded expert testimony that Kuxhausen suffers from multiple-chemical sensitivity, a diagnosis that is not generally accepted. In addition, because Kansas law authorizes a district judge to exclude expert testimony that is based on unsupported assumptions or theoretical speculation, the district court properly excluded expert testimony that Kuxhausen's ongoing problems with exposure to chemicals were caused by her brief exposure to epoxy-paint fumes."
*Kuxhausen*, 40 Kan. App. 2d at 931-32.

Kuxhausen proposed to present the testimony of three doctors in support of her claim. Chief among these was the testimony of Dr. Henry Kanarek. Dr. Kanarek went to medical school in Mexico City, then returned to the United States for a 3-year pediatric residency at Kansas University Medical Center, after which he completed a 2-year allergy fellowship at Children's Mercy Hospital and Kansas University Medical Center in adult and pediatric allergy, asthma, and immunology. He has been in practice for 13 years, during which time he has diagnosed more than 100 patients with multiple-chemical sensitivity.

Dr. Kanarek saw Kuxhausen on October 10, 2006. He conducted a physical examination of her, including an evaluation of her eyes, nose, pharynx, neck, heart, lungs, and skin. The physical examination took approximately 15 minutes. Overall, Dr. Kanarek spent approximately an hour with Kuxhausen. He also reviewed some

additional reports and results of tests that had been performed on her by other doctors. His physical examination and all of the information he received from previous tests indicated no abnormalities. He reviewed a material safety data sheet (MSDS) for the paint used in the office building, but he had no information or data regarding what paint, chemical, or contaminant was actually in the air when Kuxhausen was in the office following the painting. He also had no information regarding whether the health concerns noted on the MSDS related to aerosolized paint or offgassing from the paint, no information indicating a level of exposure required to generate eye or skin irritation, and no information about the level of any particular chemical in the paint that would remain in the air for a particular duration. Based on the information he reviewed, his experience, and his observations of her, Dr. Kanarek diagnosed Kuxhausen with multiple-chemical sensitivity and concluded that her illness was due to her exposure to the epoxy paint.

Kuxhausen also proposed to present the testimony of two other doctors: Dr. Maurice Van Strickland, an allergist and immunologist, and Dr. Daniel Doornbos, a clinical pulmonologist. Dr. Strickland saw Kuxhausen three times. He spent about an hour with her on the first visit and 15 minutes on each of the other visits. His x-ray of her sinuses and a pulmonary function test were normal. She also tested negative for a potential sensitivity to mold. Dr. Strickland ultimately concluded that Kuxhausen had multiple-chemical sensitivity, but he could not state with any certainty that her condition was due to her exposure to the epoxy paint. Dr. Doornbos testified that, as a pulmonologist, not a toxicologist, he did not have the necessary experience to make a conclusion about exposure to epoxy paint and any adverse health effects. Thus, without the causation testimony of Dr. Kanarek, Kuxhausen's case would fail.

The admissibility of expert testimony in Kansas courts is subject to K.S.A. 60-456(b):

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

"An expert must have a factual basis for his or her opinions in order to separate them from mere speculation." *State v. Papen*, 274 Kan. 149, 159, 50 P.3d 37 (2002).

"It is necessary that the facts upon which an expert relies for his or her opinion should afford a reasonably accurate basis for his or her conclusions as distinguished from mere guess or conjecture. Expert witnesses should confine their opinions to relevant matters which are certain or probable, not those which are merely possible." *State v. Struzik*, 269 Kan. 95, Syl. ¶ 2, 5 P.3d 502 (2000).

See also *Peatie v. Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 21, 961 A.2d 1016 (2009) (" 'Expert opinions must be based upon reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . To be reasonably probable, a conclusion must be more likely than not.' ").

Since we approach the issues in the reverse order taken by both the district court and the Court of Appeals, we first consider the district court's resolution of the issue which it characterized as "whether, separate from a diagnosis characterized as MCS, the Court should permit expert testimony that Plaintiff suffers from certain symptoms, conditions, or illness *as a result of* her exposure to epoxy paint fumes at her place of employment in Defendant's building." (Emphasis added.) The district court, citing K.S.A. 60-456(b), concluded that Dr. Kanarek's opinion was insufficiently based in fact to supply the causation evidence, without which Kuxhausen's case failed.

On appeal from a summary judgment, when there is no factual dispute, this court's standard of review is de novo. *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 240, 201 P.3d 680 (2009).

" 'Appellate review of a district court's grant of summary judgment is governed by well-established rules. The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of the plaintiff's case. [Citations omit-

ted.]' " *Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 166-67, 975 P.2d 1218 (1999).

The district court's summary judgment order in favor of Tillman Partners rested upon its evidentiary decision that Dr. Kanarek's causation opinion would not be admissible at trial under K.S.A. 60-456(b) and, therefore, Kuxhausen could not establish an essential element of her case. The Court of Appeals correctly found that appellate review of the district court's underlying evidentiary decision applying K.S.A. 60-456(b) is governed by an abuse of discretion standard and that "[w]e reverse for abuse of discretion on the admissibility of evidence only when no reasonable person would agree with the decision of the district court." *Kuxhausen*, 40 Kan. App. 2d at 943-44; see also *State v. Shadden*, 290 Kan. 803, 818-19, 235 P.3d 436 (2010) (Under multistep evidentiary analysis, third step, district court's application of applicable rule or principle, standard of review varies depending on rule or principle applied. Application of K.S.A. 60-456 is reviewed under an abuse of discretion standard.).

The Court of Appeals found the district court erred in its conclusion that Dr. Kanarek had expressed no causation opinion at all.

"Dr. Kanarek admitted in his testimony that he had no information regarding the amount of chemicals Kuxhausen was exposed to. He similarly admitted that he had no information about the level of chemical exposure required to cause irritation for the chemicals found in this paint. However, Kuxhausen is correct in her argument on appeal that the district court went too far in its conclusion that Dr. Kanarek had not expressed a causation opinion at all. Magic words are not required, and Dr. Kanarek did state his opinion that Kuxhausen's problems were caused by the paint-fume exposure." *Kuxhausen*, 40 Kan. App. 2d at 944.

We agree that Dr. Kanarek did state an opinion that Kuxhausen's symptoms were caused by the paint exposure. But we also agree with the Court of Appeals and the district court that the factual basis for that opinion was lacking.

Dr. Kanarek acknowledged that the precise mechanism by which exposure to chemicals causes multiple-chemical sensitivity is unknown and exposures of different levels affect different people differently. He also acknowledged that the diagnosis can be subject to abuse. He testified that he based his opinion on his examination

of Kuxhausen, the other doctors' prior objective examinations of her, and the MSDS sheet for the paint involved. He testified that he had been in practice for 13 years and had diagnosed 100 patients with multiple-chemical sensitivity. He also testified that he had considered whether Kuxhausen's symptoms were psychogenic and had ruled out that explanation.

With regard to causation evidence, Kansas courts have long held:

"In order for circumstantial evidence to be sufficient to sustain a finding in a civil case, such evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, although some other inference equally reasonable might be drawn therefrom." *American Family Mut. Ins. Co. v. Grim*, 201 Kan. 340, Syl. ¶ 1, 440 P.2d 621 (1968).

"In Kansas, an injured party's right to recover is limited to when the injury is a direct and proximate result of a defendant's negligence. *Deal v. Bowman*, 286 Kan. 853, 859, 188 P.3d 941 (2008). Proximate cause is cause 'which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred, the injury being the natural and probable consequences of the wrongful act.' *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 (2006). To satisfy the plaintiff's burden of proof on the causation element, the plaintiff must produce evidence that ' "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." ' 282 Kan. at 628 (quoting Prosser & Keeton on Torts § 41, pp. 269-70 [5th ed.1984])." *Rhoten v. Dickson*, 290 Kan. 92, 114-15, 223 P.3d 786 (2010).

See also *Hale v. Brown*, 287 Kan. 320, Syl. ¶ 1, 197 P.3d 428 (2008) ("In order to establish a claim based in negligence, a plaintiff must establish the existence of a duty, a breach of that duty, an injury, and proximate cause, which means a causal connection between the duty that was breached and the injury.").

In this case, Dr. Kanarek's opinion is ultimately based on nothing more than *post hoc ergo propter hoc* logic: the symptoms follow the exposure; therefore, they must be due to it. Such reasoning is nothing more than speculation. Dr. Kanarek's examination of the plaintiff and the medical tests done on her revealed no abnormalities. He had no data concerning the level or amount of chemicals to which Kuxhausen was exposed or the mechanism of exposure. He testified only that there were materials listed on the MSDS that

can make people sick and lead to health problems. He provided no supporting basis for concluding that those substances did make Kuxhausen sick in this case. This evidence affords no reasonable basis for the conclusion that Kuxhausen's symptoms more likely than not resulted from the defendant's conduct. In other words, Dr. Kanarek's causation opinion is totally lacking in a factual basis.

The standard of review of the district court's evidentiary decision is abuse of discretion. We certainly cannot conclude that no reasonable person would reach the same conclusion as the trial court. In fact, we find the trial court's decision sound and well reasoned. Based on our review of the evidence, we reach the same conclusion. Kuxhausen did not present a sufficient basis for the introduction of her expert's opinion that her symptoms were caused by her exposure to the epoxy paint. This finding leaves her without causation testimony to support her claim; therefore, the trial court's summary judgment in favor of Tillman Partners was appropriate and is affirmed.

DAVIS, C.J., not participating.

GLENN D. SCHIFFNER, District Judge, assigned.