(263 P.3d 821)
No. 104,412

DEBORAH CHRIESTENSON, *Appellee*, v. RUSSELL STOVER CANDIES and HARTFORD ACCIDENT and INDEMNITY, *Appellants*.

Opinion filed September 9, 2011.

*Brenden W. Webb*, of Hoffmeister, Doherty & Webb LLC, of Overland Park, for appellants.

*William L. Phalen* and *Crystal D. Marietta*, of Pittsburg, for appellee.

Before HILL, P.J., GREEN and BRUNS, JJ.

BRUNS, J.: Deborah Chriestenson was awarded permanent and total disability benefits in a 3-2 decision issued by the Workers Compensation Board (Board) more than 11 years after her employment at Russell Stover Candies ended. Although it is undisputed that Chriestenson's preexisting chemical sensitivity may have been temporarily exacerbated while she was employed by Russell Stover in 1997 and 1998, there is no substantial competent evidence in the record that Chriestenson suffered a permanent and total disability caused by her work at Russell Stover. Thus, we reverse and remand to the Board with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Chriestenson, who is now 57 years old, worked at Russell Stover in Iola from April 1997 to December 1998. More than 11 years later, the Board found that Chriestenson was entitled to permanent and total disability benefits. Specifically, the majority of the Board found that exposure to multiple chemicals during the 20-month period Chriestenson worked at Russell Stover caused her medical condition.

Chriestenson was first diagnosed with multiple chemical sensitivity approximately 11 years before she went to work at Russell Stover. According to her medical records, Chriestenson began having chronic headaches in 1986, shortly after new carpet was installed in her home. Since that time, Chriestenson has continued to have periodic problems with headaches.

In the early 1990's, several years prior to going to work at Russell Stover, Chriestenson was treated for seizures and for tremors in her right arm. She was also diagnosed with epilepsy and neurotoxic

ataxia, which is a loss of the ability to coordinate muscular movement related to exposure to poisonous substances. As a result of these neurological problems, Chriestenson's physician placed her on Dilantin to control the seizures and on Inderal to control the tremors.

Additionally, Chriestenson smoked cigarettes before, during, and after her employment at Russell Stover. According to her physician, Chriestenson was a fairly heavy smoker. She also suffered from memory loss and was tested for multiple sclerosis prior to going to work for Russell Stover.

Chriestenson worked as a plant nurse, safety coordinator, and workers compensation benefits coordinator at Russell Stover. Her office was located across the hall from a laundry facility. Chriestensen contends that she could smell bleach on a regular basis in her office. She claims to have suffered respiratory symptoms as well as increasing headaches as a result of this exposure.

Chriestenson also claims she was occasionally exposed to methyl bromide fumes in a room where nuts are fumigated at Russell Stover. In addition, she claims that she was exposed to fumes from pesticides, truck exhaust, paint, and anhydrous ammonia at various times during her employment at Russell Stover.

Chriestenson claims that her final chemical exposure at Russell Stover occurred on December 8, 1998, when the floor to her office was stripped and rewaxed. Russell Stover allowed Chriestenson to move from the office. However, Chriestenson contends she was in the room for approximately 15 minutes while she collected her things. Following this incident, Chriestenson saw a doctor retained by Russell Stover, as well as her family practitioner.

On December 18, 1998, Chriestenson's employment at Russell Stover was terminated. Ten days later, she signed an initial application for workers compensation benefits. In the application, Chriestenson expressly listed the date of the accident as December 8, 1998. Chriestenson did not list any other exposures to chemicals in her application.

Over the years, several hearings were held in Chriestenson's workers compensation case. In addition, Chriestenson was seen by several doctors. Not surprisingly, the doctors do not agree on the

issue of whether Chriestenson's exposure to chemical fumes during her employment at Russell Stover caused any permanent injury or impairment.

An administrative law judge ultimately found that Chriestenson had experienced temporary symptoms as the result of chemical exposure while working at Russell Stover. In addition, he found that the medical treatment Chriestenson received prior to June 17, 2002, was adequate to relieve her temporary symptoms. Finally, the administrative law judge found that Chriestenson did not sustain any permanent impairment from her exposure to chemicals at Russell Stover and that there was no need for ongoing or future medical treatment.

Chriestenson appealed to the Workers Compensation Board. In its Order, three members of the Board found that Chriestenson's "exposure to chemicals and fumes while working for [Russell Stover] through December 18, 1998, caused her personal injury by accident arising out of and in the course of her employment with [Russell Stover]." The majority also found that Chriestenson's "testimony about her personal condition, coupled with Dr. [Grace] Ziem's testimony, establishes that it is more probably true than not that claimant is unable to engage in substantial and gainful employment. Consequently, claimant is entitled to receive permanent total disability benefits under K.S.A. 44-510c (Furse 1993)."

However, two members of the Board agreed with the administrative law judge and wrote a vigorous dissent, contending that Chriestenson "should be denied benefits beyond short-term medical treatment for the temporary aggravations suffered while [she] was employed by [Russell Stover]." In particular, the dissenters stated that the majority should not have based its conclusions regarding both causation and permanent disability on the opinions of Dr. Ziem.

The dissent expressed concern that although the majority referred to Dr. Ziem "as an expert in the controversial field of chemical illness," she is not board certified in any recognized specialty. Additionally, the two dissenters were concerned by the fact that Dr. Ziem had no information regarding the strength of the chemicals Chriestenson may have been exposed to at Russell Stover and

did not know the duration of the alleged exposures. The dissent also noted that any information Dr. Ziem had about the types of chemicals involved had been provided by Chriestenson more than 7 years after her employment at Russell Stover had ended.

The dissenting opinion pointed out that Dr. Ziem did not review any of Chriestenson's prior medical records before rendering her opinion on causation. It was also noted that there were no contemporaneous medical reports in the record corroborating the allegations of multiple chemical exposures at Russell Stover, with the exception of those relating to the incident on December 8, 1998. Moreover, the two dissenters found it significant that Dr. Ziem believed Chriestenson's history of cigarette smoking, before, during, and after her employment at Russell Stover was irrelevant to her workers compensation claim.

The dissent noted that Dr. Jay Zwibelman, who is board certified in psychiatry and neurology, had found that Chriestenson's ongoing problems stem from preexisting conditions, including her long history of cigarette smoking. It pointed to Dr. Zwibelman's testimony that cigarette smoke is extremely toxic and that it had an impact on Chriestenson's medical condition. Furthermore, the two dissenters found it to be significant that Dr. Zwibelman first examined Chriestenson in February 1999, shortly after her employment at Russell Stover had ended, while Dr. Ziem did not see Chriestenson until June 2006.

Finally, it was noted in the dissenting opinion that Dr. Zwibelman performed a full neurological examination on Chriestenson and that the results were normal. Hence, the two dissenters distinguished Dr. Zwibelman's causation opinion, which was based on a review of Chriestenson's past medical history and a full neurological examination, and from Dr. Ziem's causation opinion, which was based "almost solely" on subjective information provided by Chriestenson without the benefit of past medical history. Thus, the dissent concluded that Dr. Zwibelman's opinion should have been adopted by the Board.

## ISSUE PRESENTED AND ANALYSIS

The issue presented in this case is whether the Board erred in

finding that Chriestenson suffered permanent and total disability caused by exposure to chemicals while she was an employee of Russell Stover from April 1997 to December 1998.

*Standard of Review*

Pursuant to K.S.A. 44-556(a), final orders of the Board are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* On appeal, we must apply the standard of review which was in force at the time the final action by the Board was taken. See K.S.A. 77-621(a)(2); *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 172, 239 P.3d 51 (2010). Thus, because the Order of the Board in the present case was entered on April 30, 2010, we will apply the standard of review set forth in K.S.A. 2009 Supp. 77-621.

As to questions of fact, we review the evidence in light of the record as a whole to determine whether the findings of the Board are supported by substantial evidence. See K.S.A. 2009 Supp. 77-621(c)(7). The term "substantial evidence" refers to "such evidence as a reasonable person might accept as being sufficient to support a conclusion." *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

Moreover, "in light of the record as a whole" is statutorily defined to mean

"that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2009 Supp. 77-621(d).

Furthermore, we may grant relief if we determine that the Board erroneously interpreted or applied the law or if its action was otherwise unreasonable, arbitrary, or capricious. K.S.A. 2009 Supp. 77-621(c)(4), (8). We exercise unlimited review over questions involving the interpretation or construction of a statute and owe "[n]o significant deference" to the Board's interpretation or construc-

tion. *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009).

*Kansas Workers Compensation Act*

The Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*, was enacted to award disability benefits to employees for damages resulting from injuries received at the workplace. Whether an injury is compensable is a question over which an appellate court exercises unlimited review. *Coleman v. Swift-Eckrich*, 281 Kan. 381, 383, 130 P.3d 111 (2006).

"If in any employment to which the workers compensation act applies, personal injury by accident *arising out of* and in the course of employment is *caused* to an employee, the employer shall be liable to pay compensation to the employee . . . ." (Emphasis added.) K.S.A. 44-501(a). "The phrase 'arising out of' implies some *causal connection* between the accidental injury and the employment." (Emphasis added.) 281 Kan. at 383. "The burden to show that an injury arose out of employment is upon the claimant." 281 Kan. at 384.

Where the permanency of a disease or condition does not result from the work-related injury, the employer is not liable for the permanent disability. See *Casey v. Dillon Companies., Inc.*, 34 Kan. App. 2d 66, 76, 114 P.3d 182, *rev. denied* 280 Kan. 981 (2005). Furthermore, an employee "shall not be entitled to recover for a preexisting condition, except *to the extent that the work-related injury causes increased disability*." (Emphasis added.) K.S.A. 44-501(c).

## INSUFFICIENCY OF EVIDENCE OF PERMANENT AND TOTAL DISABILITY ARISING OUT OF EMPLOYMENT

Russell Stover acknowledges there was a period of time following the incident on December 8, 1998, for which Chriestenson was entitled to temporary workers compensation benefits for aggravation of her preexisting sensitivity to chemicals. However, Russell Stover contends the Board's finding that Chriestenson suffered a permanent and total disability arising out of or caused by exposure

to chemicals at her employment was erroneous, as it was based on nothing more than speculation.

The conclusion reached by the majority of the members of the Board is largely based on a "controversial diagnosis" that medical organizations and courts throughout the United States have found is not sufficiently supported by science. See *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 315, 241 P.3d 75 (2010). In fact, the majority of the Board recognizes in its Order that Chriestenson's permanent and total disability claim is largely dependent upon an "expert medical opinion concerning a controversial area of medicine that is evolving." As a panel of this court has found, it is because the link between sensitivity to multiple chemicals and specific exposure to any particular chemicals "is so questionable that the diagnosis of multiple-chemical sensitivity has not gained acceptance in the medical community." *Kuxhausen v. Tillman Partners*, 40 Kan. App. 2d 930, 944, 197 P.3d 859 (2008), *aff'd* 291 Kan. 314 (2010).

In *Kuxhausen*, our Supreme Court held that it is not sufficient to establish the cause of chemical sensitivity unless the actual level of exposure or mechanism by which exposure causes multiple-chemical sensitivity is demonstrated. 291 Kan. at 317. Of course, as Chriestenson correctly points out, *Kuxhausen* is a civil case and the technical rules of evidence do not apply in workers compensation cases. See *Boeing Military Airplane Co. v. Enloe*, 13 Kan. App. 2d 128, 131, 764 P.2d 462 (1988), *rev. denied* 244 Kan. 736 (1989). Nevertheless, a claimant in a workers compensation case has the burden to show a causal connection between a disease or condition and his or her employment. See *Coleman*, 281 Kan. at 383-84.

Additionally, Chriestenson argues that there is "no requirement that a claimant's disease or condition have a name in order to be compensable" in a workers compensation case. See K.S.A. 44-5a01(b); *Armstrong v. City of Wichita*, 21 Kan. App. 2d 750, 754, 907 P.2d 923 (1995), *rev. denied* 259 Kan. 927 (1996). Although this is true, this does not remove the requirement that causation in a workers compensation case must be based on substantial evidence and not on mere speculation. See *Anderson v. Victory Junc-*

*tion Restaurant*, No. 95,871, 2006 WL 3056514, at *2 (Kan. App. 2006) (unpublished opinion).

In *Kuxhausen*, our Supreme Court found the causation opinion rendered by an expert witness to be inadequate because it was "ultimately based on nothing more than *post hoc, ergo propter hoc* logic: the symptoms follow the exposure; therefore, they must be due to it." 291 Kan. at 320. Similarly, this court has held in a workers compensation case that "[w]hen the salient question is the cause of a medical condition, the maxim of *post hoc, ergo propter hoc* is not competent evidence of causation." *Gann v. Driver Management, Inc.*, No. 95,368, 2006 WL 3589971, at *3 (Kan. App. 2006) (unpublished opinion). Hence, we review the record in the present case to determine whether there is competent evidence of causation and conclude that there is not.

In its Order, the majority of the Board candidly admits that it was "persuaded" by the testimony of Dr. Ziem in concluding that Chriestenson's employment at Russell Stover in 1997 and 1998 caused her to be permanently and totally disabled. It appears from a review of the record that Dr. Ziem only saw Chriestenson in person on June 28, 2006, which was more than 7 years after Chriestenson's employment at Russell Stover ended. On the same day, Dr. Ziem issued a report in which she diagnosed Chriestenson with toxic encephalopathy, peripheral neuropathy, and reactive upper and lower airway disease.

As the dissenting members of the Board pointed out, Dr. Ziem did not review Chriestenson's prior medical records relating to her chemical sensitivity and neurological problems before rendering her causation opinion. In addition, Dr. Ziem admitted during her deposition testimony in this case that she did not have any information on the quantity of chemicals to which Chriestenson was exposed at Russell Stover. Moreover, when asked about other factors such as conditions in Chriestenson's home and her smoking habit, Dr. Ziem stated that they were irrelevant. Likewise, when Chriestenson's prior neurological conditions were brought to Dr. Ziem's attention during her deposition, she stated that they were also irrelevant.

When Dr. Ziem was asked in her deposition about the level of exposure to chemicals at Russell Stover, she stated that the concentrations were high enough to cause symptoms. Such reasoning is a classic example of *post hoc, ergo propter hoc* logic and is not helpful in establishing a causal connection between the alleged permanent disability and Chriestenson's employment at Russell Stover. Thus, although we do not question Dr. Ziem's ability to render opinions regarding Chriestenson's symptoms and diagnosis, we find that her causation opinion is not based on substantial evidence.

Our research has revealed that several courts across the United States have also had difficulty with causation opinions expressed by Dr. Ziem in chemical sensitivity cases. In *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 658 S.E.2d 603 (2008), Dr. Ziem was not permitted to testify on causation in an civil lawsuit against a manufacturer and seller of a floor covering product. The Georgia Supreme Court upheld a trial court's determination that "Dr. Ziem's methods [are] based only on her own experience and opinions, without any support in published scientific journals or any reliable techniques for discerning the behaviors and effects of the chemicals contained" in the floor covering product. 283 Ga. at 279.

Likewise, in *Wynacht v. Beckman Instruments, Inc.*, 113 F. Supp. 2d 1205 (E.D. Tenn. 2000), the United States District Court for the Eastern District of Tennessee did not allow Dr. Ziem to offer an opinion on causation in a product liability case arising out of alleged exposure to chemicals in the workplace. Although the court found her qualified to diagnose medical conditions and treat patients, it found that "[t]he ability to diagnose medical conditions is not remotely the same . . . as the ability to deduce, delineate, and describe, in a scientifically reliable manner, the causes of those medical conditions." 113 F. Supp. 2d at 1209. See also *Minner v. American Mortg. & Guar. Co.*, 791 A.2d 826, 849 (Del. Super. 2000) (Dr. Ziem's opinions regarding multiple-chemical sensitivity and causation were excluded from the jury in a civil case as "unreliable" and "based on nothing other than speculation."); *Yang v. E.I. du Pont de Nemours & Co.*, No. Civ.A.04A-01-0008 MMJ, 2004 WL 3029943, at *5 (Del. Super. 2004) (unpublished opinion)

(Delaware Industrial Accident Board did not accept Dr. Ziem's testimony on causation in case involving exposure to chemical fumes.); *Chanin v. Eastern Virginia Med. School*, 20 Va. App. 587, 590, 459 S.E.2d 523 (1995) (Virginia Workers Compensation Commission found the opinion of Dr. Ziem was " 'based on an incorrect understanding of the facts of the claimant's work environment' " in case involving claim of multiple-chemical sensitivity.).

We have focused on the testimony of Dr. Ziem because the majority of the Board makes it clear that it relied upon her causation opinion. We note, however, that Dr. Richard Hull has rendered a similar opinion regarding causation. In reviewing his testimony, we find that Dr. Hull's causation opinion is also based on *post hoc, ergo propter hoc* logic and likewise does not constitute competent evidence of causation.

Accordingly, we reverse the Board's finding that Chriestenson suffered a permanent and total disability arising out of or caused by her employment at Russell Stover from April 1997 to December 1998. In light of our holding, we remand this case to the Board for further action consistent with this opinion. Specifically, we direct the Board to determine the amount of workers compensation benefits to which Chriestenson may be entitled as a result of any aggravation of her preexisting chemical sensitivity while she was employed by Russell Stover.

Reversed and remanded with directions.