NOT DESIGNATED FOR PUBLICATION

No. 122,239

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL WHITE,
*Appellee*,

v.

RGV PIZZA HUT and ARGONAUT INSURANCE CO.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed June 11, 2021. Affirmed and remanded with directions.

*Kip A. Kubin*, of Martin Pringle Attorneys at Law, of Overland Park, for appellants.

*Brian D. Pistotnik*, of Pistotnik Law Offices, L.L.C., of Wichita, for appellee.

Before BRUNS, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: RGV Pizza Hut contends that as a Texas corporation it cannot be liable under the Kansas Workers Compensation Act merely because it contracted with Shomberg, Inc., a Kansas corporation, to paint restaurants in its home state. Daniel White, an employee of Shomberg, fell and was seriously injured working at one of RGV's restaurants. But Shomberg had neither workers compensation insurance nor the financial resources or a legal obligation to pay benefits that might be due White. Although RGV has no ongoing ties to Kansas, the Workers Compensation Appeals Board ruled that the company can be legally liable for those benefits as a statutory employer. RGV has appealed that ruling.

The Kansas Workers Compensation Act covers employees of Kansas corporations who are injured while working outside the state. K.S.A. 44-506. So Shomberg could be held to account for White's covered injuries. Likewise, under the Kanas Workers Compensation Act, a corporation that subcontracts out work that is an integral or inherent part of its business may be liable for benefits due employees of the subcontractor. K.S.A. 44-503(a). On appeal, RGV has failed to show that, in tandem, those provisions do not impose workers compensation liability on it. Moreover, by contracting with a Kansas business for onsite labor, RGV submitted to personal jurisdiction in Kansas for workers compensation proceedings, consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The Board also found that White properly availed himself of the protections in K.S.A. 2020 Supp. 44-523(f)(2) to avert having his claim for benefits dismissed for lack of prosecution.

We find no error in the Board's resolution of those points. We, therefore, affirm the Board's decision and remand this case for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the issues on appeal, the underlying facts can be stated succinctly. RGV owns and operates 45 Pizza Hut restaurants in Texas. Under the franchise agreement with Pizza Hut, RGV must run the restaurants in conformity with detailed rules governing product preparation, physical layout and appearance, and other matters. Pertinent here, the agreement requires RGV to keep the roofs of the restaurants in good repair and specifies the color the roofs must be painted. Pizza Hut may terminate the franchise agreement if RGV violates its terms.

2

RGV has no restaurants in Kansas and does not otherwise extensively or regularly conduct business in this state. Over the years, RGV has contracted with Shomberg from time to time to clean, repair, and paint the roofs on its Pizza Hut restaurants. This is skilled work done with specialized equipment that requires some training and experience to operate. Likewise, the work is done on pitched roofs well above ground level, so there is a predictable, if statistically small, risk of injury for a literal misstep. RGV has never had its own employees do any work on the roofs. Nor does the company own equipment used to clean or paint the roofs.

In April 2016, Chris Wicker, the longtime general manager of RGV and a principal in the company, contacted Christian Shomberg, the owner of Shomberg, to arrange for the maintenance and painting of the roofs of about 10 of the Pizza Hut restaurants. Christian Shomberg had begun to wind down that business in favor of other commercial enterprises. Nonetheless, he agreed to have Shomberg do the roofing work for RGV. The communications between Wicker and Christian Shomberg consisted largely of e-mails; the two companies never signed a written contract for the 2016 work.

Christian Shomberg placed an advertisement for workers skilled in commercial roof maintenance and painting. White responded, and he was hired. Christian Shomberg and White apparently did a little work before heading to Texas—mostly so Christian Shomberg could assess White's skills. For this appeal, we consider White to be an employee of Shomberg under the Workers Compensation Act. That employment relationship was not in dispute before the Board.

Christian Shomberg, White, and a third person went to Texas to do the work for RGV. In November 2016, White fell from the roof of one of the restaurants and seriously injured his leg. The injury required surgery. White later testified that he walked with a limp and began experiencing back and hip pain. Again, for purposes of this appeal, there is no dispute White's injury occurred in the scope and course of his employment with

3

Shomberg and is covered under the Workers Compensation Act. Everyone also agrees Shomberg is not available as a source of workers compensation benefits, and the company has been dismissed from this action. The principal issues before us are whether RGV may be substituted for Shomberg as a statutory employer under K.S.A. 44-503 and whether that substitution would offend the Due Process Clause by imposing personal jurisdiction over RGV despite its limited contacts with Kansas as the forum state. Given the procedural progression of the case, neither the administrative law judge nor the Board has considered what benefits, if any, White may be entitled to receive.

LEGAL ANALYSIS

RGV has appealed adverse rulings of the Board, so this appeal comes to us through the Kansas Judicial Review Act, K.S.A. 77-601 et seq. K.S.A. 2020 Supp. 44-556(a). The scope of our review and the kinds of errors we may correct are set out in K.S.A. 77-621. RGV bears the burden of establishing reversible error. K.S.A. 77-621(a)(1). We do not see that the primary issues turn on material factual disputes; we, therefore, exercise review without deference to the Board's resolution of what are functionally questions of law. See *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017).

*RGV's Statutory Liability*

Shomberg and White had an employment relationship that triggered coverage under the Workers Compensation Act. As provided in K.S.A. 44-506, that coverage extended to the on-the-job injury White suffered in Texas.

The Workers Compensation Act also provides that commercial entities contracting out work may in some circumstances become liable for benefits due the subcontractor's employees for on-the-job injuries sustained while performing the subcontract. K.S.A. 44-

4

503(a). The principal contracting out the work is then considered a "statutory employer" under the Workers Compensation Act. See *Bright v. Cargill, Inc.*, 251 Kan. 387, 390, 837 P.2d 348 (1992). The Board found RGV to be a statutory employer of White.

Under K.S.A. 44-503(a), a principal becomes a statutory employer if it subcontracts work that is "part of [its] trade or business" or that it "has contracted to perform." The Board found that RGV's business included maintaining and painting the roofs of the Pizza Hut restaurants, thus comporting with the first test for a statutory employer. One Board member concurred, finding that RGV had contracted with Pizza Hut to maintain and paint the restaurant roofs and, in turn, subcontracted that work to Shomberg, satisfying the second test in K.S.A. 44-503(a). We discount the concurrence. The franchise agreement obligates RGV to keep up the appearance of its restaurants but does not specify a means for accomplishing that obligation. In other words, RGV did not contract with Pizza Hut to perform the roof maintenance and painting with its own employees. So RGV wasn't contracting out specific work duties it had agreed to perform when it hired Shomberg.

The Kansas Supreme Court has developed two independent criteria for determining when a principal becomes a statutory employer under the first test set out in K.S.A. 44-503(a): (1) the subcontracted work is "inherent in and an integral part of [its] trade or business"; or (2) the subcontracted work "ordinarily [would] have been done by [its] employees." *Hanna v. CRA, Inc.*, 196 Kan. 156, Syl. ¶ 1, 409 P.2d 786 (1966); see *Bright*, 251 Kan. 387, Syl. ¶ 3 (endorsing *Hanna* criteria). Either is sufficient to impose statutory employer status under the Workers Compensation Act. In *Bright*, the court refined the first criterion to focus the assessment of inherency and integrality on whether similar business entities perform the work with their own employees. 251 Kan. at 399. Thus, the first criterion looks at whether businesses in a particular industry or commercial field typically perform the work with their own employees. If so, a business subcontracting the work will be considered a statutory employer of the subcontractor's

5

workers. The second criterion looks at what the responding employer itself typically does. If it usually performs the work but subcontracted on a specific occasion, it becomes the statutory employer of the subcontractor's workers. Here, everyone agrees the second criterion does not apply to RGV, since it does not do roof maintenance and painting with its own employees and never has.

The operative language in K.S.A. 44-503(a) has remained intact through multiple revisions of the Workers Compensation Act. The standards for a statutory employer continue to be those set out in *Hanna* as modified in *Bright*. See *Ramirez v. Garay's Roofing*, No. 119,948, 2019 WL 3367831, at *3-4 (Kan. App. 2019) (unpublished opinion).

On appeal, RGV argues the Board erred in holding it to be White's statutory employer because maintaining and painting the roofs of the Pizza Hut restaurants is neither inherent in nor integral to its business. RGV submits its business is making and selling pizzas—something it can do with or without a Pizza Hut franchise. So if RGV declined to keep up the roofs or painted them an unapproved color, it might lose its franchise, but it could still sell pizzas. RGV, therefore, says what it does with the roofs cannot be so central to its business as to render it a statutory employer of White.

As RGV has framed and argued the point, we disagree. The premise of the argument seems to be amiss. RGV is not simply in the business of selling pizzas; it is in the business of selling *Pizza Hut* pizzas. As a franchisee, RGV benefits from Pizza Hut's national marketing and its strategic development of innovative twists on pizza, calzones, and other menu items. More broadly, however, Pizza Hut intentionally cultivates a known and largely uniform customer experience across its flagged restaurants from exterior appearance to available menu items to the actual preparation and presentation of the food. The deliberate and exhaustive homogeneity invites people familiar with one Pizza Hut to patronize others precisely because of the comfortable predictability. The

6

exacting requirements in the franchise agreement are an integral part of the commercial enterprise that is Pizza Hut.

RGV's argument, therefore, fails to undercut the Board's determination of statutory employer status under K.S.A. 44-503(a). In the absence of any other developed arguments from RGV challenging the Board's conclusion, we do not explore the point further. See *State v. Bradford*, 311 Kan. 747, 752-53, 466 P.3d 930 (2020).

*Personal Jurisdiction Over RGV*

RGV argues that it lacks sufficient minimum contacts with Kansas to be held to answer in adjudicatory proceedings here. Under the Due Process Clause, a party must have some demonstrable connection to the forum state establishing personal jurisdiction and, thus, permitting the proceedings to go forward. Otherwise, the proceedings against that party offend basic notions of "fair play" and should not be allowed. *BNSF Railway Co. v. Tyrrell*, 581 U.S. ___, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Constitutionally sufficient personal jurisdiction may be based on a party's general contacts with the forum state or contacts arising specifically from the matter being adjudicated. *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. ___, 137 S. Ct. 1773, 1779-80, 198 L. Ed. 2d 395 (2017). General jurisdiction derives from a corporation's "continuous and systematic" contacts with or presence in the forum state and must be extensive. *BNSF Railway*, 137 S. Ct. at 1558. RGV does not have those kinds of ties to Kansas.

Here, there is no dispute that RGV sought out and entered into a contract with Shomberg knowing the company was based in Kansas. The contract was never reduced to writing, and all of its terms may have been difficult to tease out of the communications between Wicker and Christian Shomberg. But there plainly was an agreement requiring

7

Shomberg to perform labor-intensive work on a significant number of RGV's restaurants. Despite the nature of the contracted services, RGV did not require Shomberg to establish it had workers compensation insurance. White's workers compensation claim equally plainly related to the contractual relationship between RGV and Shomberg. That is enough to satisfy the requirements of the Due Process Clause for personal jurisdiction over RGV in Kansas to adjudicate White's workers compensation claim.

But simply because Party A, a Kansas resident, contracts with Party B, a Texas resident, Kansas does not automatically acquire personal jurisdiction over Party B to litigate a breach of contract claim against it. See *Walden v. Fiore*, 571 U.S. 277, 285-86, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). For example, a tourist from Kansas who ordered a pizza at one of RGV's restaurants presumably could not later sue the company in the Kansas courts for breach of contract or in tort because the food had been adulterated. See *Dirks v. Carnival Cruise Lines*, 642 F. Supp. 971, 973-74 (D. Kan. 1986); *Dunham v. Hunt Midwest Entertainment, Inc.*, 2 Neb. App. 969, 987, 520 N.W.2d 216 (1994) (Missouri amusement park's general advertising in Nebraska insufficient to create personal jurisdiction there for injuries Nebraska residents sustained at the amusement park). RGV's interaction with the tourist would not entail any contact with Kansas itself, as the forum state. See *Bristol-Myers*, 137 S. Ct. at 1782-83.

Other sorts of contracts between our Party A and Party B may create sufficient minimum contacts with Kansas based on their terms and the circumstances of their formation even if Party B remains in Texas and never physically enters Kansas. *Walden*, 571 U.S. at 283-85. The due process analysis looks at the circumstances connecting Party B, as the defendant or respondent, to both the forum and the litigation rather than merely to Party A. Contact directed into the forum, as by "mail, or some other means," is relevant, so physical presence in the forum state is not a necessary condition for personal jurisdiction. 571 U.S. at 285. And the circumstances creating the minimum contacts necessary for personal jurisdiction in the forum state often will be "intertwined" with the

8

parties' interactions. 571 U.S. at 286. Ultimately, the existence of personal jurisdiction is heavily dependent upon the particular facts. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (recognizing inquiry heavily fact based and "reject[ing] any talismanic jurisdictional formulas"); see also *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 294 (4th Cir. 2009) (recognizing assessment of personal jurisdiction to be "necessarily fact-based"). The United States Supreme Court recently reaffirmed the basic principles of general and specific personal jurisdiction. See *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. ___, 141 S. Ct. 1017, 1024-25, 209 L. Ed. 2d 225 (2021).

RGV relies on *Walden* and *International Shoe*, the pioneering opinion setting out the modern doctrine of personal jurisdiction, to support its position. We are unpersuaded. The facts of *Walden* are inapposite—the Court found no personal jurisdiction in Nevada over a government agent for an intentional constitutional tort he allegedly committed in Georgia against two Nevada residents as they traveled through the Atlanta airport. The principles governing personal jurisdiction outlined in *Walden* do not support the argument this workers compensation action offends due process concepts of minimum contacts and fair play. 571 U.S. at 284-85 (Personal jurisdiction may exist when a party "creates" substantive contacts with the forum state itself extending beyond interactions with residents of the forum state that may occur elsewhere.). Entering into a contract that implicates contacts with the forum state may suffice. 571 U.S. at 285.

The Court in *International Shoe* offered this much cited statement of the law: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 [1940]. The Court rejected the notion of a "mechanical or quantitative" test for personal jurisdiction and opted for a more

individualized assessment "depend[ant] . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at 319; see also *Burger King*, 471 U.S. at 485-86. But a state cannot exercise personal jurisdiction over a corporation having "no contacts, ties, or relations" to it. *International Shoe*, 326 U.S. at 319.

Expounding on those principles 40 years later, the Court recognized personal jurisdiction consistent with the Due Process Clause may be established when a party has "'purposefully directed'" its activities at the forum state and the resulting litigation arises from legal injuries associated with those activities. *Burger King*, 471 U.S. at 472-73. Accordingly, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." 471 U.S. at 474. If a party has purposefully established some minimum contact with the forum state, the courts may consider an array of factors to measure the due process fairness of the adjudication, including the litigation burdens imposed on the defending party and shared state interests in fostering "'fundamental substantive social policies.'" 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 [1980]). Those remain guideposts for courts considering challenges to personal jurisdictions. See *Ford Motor Company*, 141 S. Ct. at 1030 (state's interest in enforcing its "own safety regulations" reflects form of "'interstate federalism'" favoring personal jurisdiction); *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 402 (7th Cir. 2020); *Packaging Systems and Enterprises, Inc. v. Operational Solutions, Inc.*, No. 117,930, 2018 WL 2748501, at *5 (Kan. App. 2018) (unpublished opinion).

Here, as we have indicated, RGV purposefully sought out Shomberg, as it had in the past, to perform the roof maintenance and painting. And, in doing so, RGV knew full well it was contracting with a Kansas corporation. There was nothing random or attenuated about that connection. It was not the result of RGV's general advertising or its solicitation of any interest bidders for the work. Likewise, RGV is a sophisticated

commercial entity; it was not an unsuspecting consumer snagged through some fine print in a take-it-or-leave-it agreement. Those are considerations cutting against a violation of due process fair play. See *Burger King*, 471 U.S. at 485-86.

In addition, the contract between RGV and Shomberg was considerably more than an incidental transaction. Shomberg agreed to perform substantial work on about 10 restaurants. The work required skilled labor and entailed a foreseeable, if limited, risk of physical injury. Had RGV not contracted out the work, it presumably would have had to hire additional employees for that purpose. Workers compensation statutes are ubiquitous, so RGV knew or reasonably should have known Shomberg's employees were entitled to such benefits for on-the-job injuries—just as its own employees would have been. Although the statutory protections vary from state to state, RGV apparently chose not to require Shomberg to insure for payment of workers compensation claims as a shield against its own potential liability.

As an action for workers compensation benefits, this proceeding substantively differs from a typical civil action in ways that bolster Kansas' interest as the forum state in exercising personal jurisdiction over RGV consistent with the considerations outlined in *Burger King*. Civil suits grounded in negligence or breach of contract redress private wrongs between the parties. Historically, workers compensation statutes have advanced a significant social welfare policy promoting the public good. Those statutes extend payments for medical care and as income replacement to persons injured on the job in a streamlined administrative process without regard to fault. The process displaced civil tort actions that depended on proving an employer's negligence and historically imposed harsh bars to recovery, such as contributory negligence. But under workers compensation schemes, employers no longer faced juries or potentially large verdicts for noneconomic damages in civil suits that were often both risky and expensive to defend. On balance, workers compensation was viewed as progressive legislation aimed at caring for injured workers and keeping them and their families from destitution or the public dole. See

11

*Hawkins v. Southwest Kansas Co-op Service*, 58 Kan. App. 2d 38, 44-45, 464 P.3d 14 (2020) (discussing history and purpose of workers compensation measures), *aff'd in part, rev'd in part* 313 Kan. __, 484 P.3d 236 (2021). Accordingly, the nature of these proceedings—advancing the objectives of the Kansas Workers Compensation Act, as a fundamental social policy—favor finding personal jurisdiction over RGV. Moreover, RGV has pointed to no actual prejudice or procedural disadvantage to it in having to litigate this administrative action in Kansas apart from having to answer at all.[1]

[1]Of late, some workers compensation claimants contend the Kansas process has become so skewed in favor of employers that it no longer adequately serves the socially progressive purposes that prompted its enactment and is, therefore, unconstitutional. The Kansas Supreme Court recently acknowledged but averted the constitutional issue by construing a portion of the Workers Compensation Act to vitiate a cornerstone attack on the current scheme. See *Johnson v. U.S. Food Service*, 312 Kan. ___, 478 P.3d 776, 778-80 (2021). RGV and White have not joined that debate here. Especially given the ruling in *Johnson*, the competing views of the present worth of the Workers Compensation Act as a matter of public policy do not bear on our assessment of personal jurisdiction over RGV.

We also discount arguments RGV makes based on *Abbey v. Cleveland Inspection Services, Inc.*, 30 Kan. App. 2d 114, 41 P.3d 297 (2002), and on K.S.A. 2020 Supp. 60-308(b), the Kansas long-arm statute. In *Abbey*, an Oklahoma company hired a Kansas resident to do work on a project in New Mexico, where the individual suffered an on-the-job injury. The Oklahoma company was insured for workers compensation claims through the State Insurance Fund of Oklahoma. The only issue before the court in *Abbey* was personal jurisdiction over the Insurance Fund for purposes of a Kansas workers compensation claim. The court held the Insurance Fund lacked minimum contacts with Kansas and could not have been subject to liability under K.S.A. 44-559, a specific statute governing insurance carriers. 30 Kan. App. 2d at 117-19. But RGV is neither factually nor legally situated similarly to the Insurance Fund in *Abbey*. Unlike the Insurance Fund, RGV contracted directly with Shomberg, a Kansas corporation, to do extensive work on its restaurants. And RGV's liability was based on its status as a

12

statutory employer and not as an insurer of a covered employer. As such, RGV was legally more analogous to the Oklahoma company that hired the Kansas worker rather than to the Insurance Fund.

RGV's reliance on the long-arm statute is similarly unavailing. Under K.S.A. 2020 Supp. 60-308(b), persons or entities engaging in specified acts in Kansas thereby submit to the jurisdiction of this state's courts for civil proceedings arising from those acts. The long-arm statute, however, does not apply to workers compensation claims, since they are distinct administrative actions brought under the Workers Compensation Act rather than civil lawsuits. Nonetheless, RGV contends it failed to satisfy K.S.A. 2020 Supp. 60-308(b)(1)(E) by entering into a contract with a Kansas resident to be performed in some part in this state. Even assuming the premise to be correct, the long-arm statute also applies to a party "having contact with [Kansas] that would support jurisdiction consistent with the constitutions of the United States and this state." K.S.A. 2020 Supp. 60-308(b)(1)(L). That subsection renders the long-arm statute coextensive with personal jurisdiction permissible under the Due Process Clause. We have already examined RGV's argument for lack of personal jurisdiction on due process grounds and found it legally wanting. So K.S.A. 2020 Supp. 60-308 would afford RGV no additional shield to these proceedings if it were applicable.

Although RGV's contacts with Kansas have been limited, they include the direct solicitation of Shomberg to perform work with its employees on at least 10 of the company's restaurants with the known and ever present risk one or more of those workers might be injured on the job. RGV, as a sophisticated business enterprise, similarly knew or should have known an injury likely would trigger a workers compensation claim to be adjudicated administratively in Kansas. Those circumstances are enough to establish the minimum contacts necessary to satisfy the due process requirements for personal jurisdiction over RGV for this workers compensation proceeding. Nothing about that

exercise of personal jurisdiction has impeded RGV's ability to respond to the claim or otherwise suggests a lack of fair play in requiring a response.

*White's Timely Prosecution of Benefits Claim*

Finally, RGV contends White did not timely pursue his claim for benefits and the administrative law judge erred in granting him an extension under K.S.A. 2020 Supp. 44-523(f). If a claimant fails to proceed to a regular hearing within one year after a preliminary hearing denying the claim, an administrative law judge may entertain a motion from the respondent employer to dismiss the proceeding for a failure to prosecute. A dismissal is with prejudice. A claimant may avert dismissal if he or she "can prove a good faith reason for the delay." K.S.A. 2020 Supp. 44-523(f)(2). The parties have not directed us to any appellate cases construing K.S.A. 2020 Supp. 44-523(f)(2), and we have found none.

White's lawyer represented to the administrative law judge that the challenged delay arose primarily from difficulties in obtaining discovery from Shomberg and RGV bearing on the status of those businesses as covered employers under the Workers Compensation Act. The administrative law judge, of course, had full access to the claim file in assessing the obstacles to discovery. While disputes over a respondent's status as a covered employer come up from time to time, they are relatively rare. But the employer's status entails a gatekeeping issue: If an employer is not covered, it cannot be held to answer. Here, at the preliminary hearing, the administrative law judge found RGV and Shomberg were not covered employers, a decision a single Board member upheld on review. The administrative law judge found White's continuing efforts to discover evidence bearing on the status of Shomberg and RGV as covered employers presented a good-faith reason to excuse the delay in moving the case forward to final determination, thereby precluding dismissal under K.S.A. 2020 Supp. 44-523(f)(2) for a failure to prosecute. In short, White needed the evidence to combat the adverse preliminary hearing

14

ruling. The Board agreed, finding White "was litigating the case" for most of the applicable one-year period.

At the outset, we face a question over our standard of review on this issue. If there were disputed issues of fact the administrative law judge and the Board resolved, we presumably would apply a mixed standard. Under K.S.A. 77-621(d), we review an administrative agency's factual findings for substantial support in the evidentiary record as a whole, giving due deference to its credibility determinations and without reweighing conflicting evidence. See *Ward v. Allen County Hosp.*, 50 Kan. App. 2d 280, 284-85, 324 P.3d 1122 (2014). As we have indicated, we independently review the agency's legal conclusions in light of the established facts. *Mera-Hernandez*, 305 Kan. at 1185. We may reverse an agency ruling if it reflects an error of law; lacks factual support; or "is otherwise unreasonable, arbitrary[,] or capricious"; among other reasons. K.S.A. 77-621(c). We decline to further label or characterize our standard of review.

As with the other issues RGV has raised on appeal, we perceive no material factual disputes on the propriety of the extension under K.S.A. 2020 Supp. 44-523(f)(2). We, therefore, approach this as a legal question without deference to the administrative law judge or the Board. *Mera-Hernandez*, 305 Kan. at 1185. RGV would be entitled to no more favorable a standard of review, so an error on our part inures to its benefit.[2]

[2]There is a substantive question about what amounts to a "good faith reason" under K.S.A. 2020 Supp. 44-523(f)(2). The parties have not delved into the meaning of the phrase. Conceptually, "good faith" may be subjective, objective, or both. Subjective good faith refers to the actor's desire or intent to act honestly or fairly. See *United States v. Wallen*, 874 F.3d 620, 629-30, 632 (9th Cir. 2017) (recognizing subjective good faith may be defense to criminal charge under Endangered Species Act). Conversely, objective good faith turns on the outward reasonableness or fairness of the actor's conduct without regard to the intent animating that conduct. *Hammer v. Thompson*, 35 Kan. App. 2d 165, 175, 129 P.3d 609 (2006) (merchant's obligation of good faith under Uniform Commercial Code requires both honesty in fact and adherence to commercially reasonable standards); *Wallen*, 874 F.3d at 631 (good-faith exception to exclusionary rule

based on objective reasonableness). We do not need to decide the issue because the administrative findings are consistent with both subjective and objective good faith.

On appeal, RGV makes two arguments challenging the extension granted White under K.S.A. 2020 Supp. 44-523(f)(2). First, RGV seems to say the administrative law judge and the Board erred in finding good cause, but it never precisely explains the error. We are unmoved. The contention consists of nothing more substantive than a conclusory retort: "No, that's not a good faith reason." White's articulated reasons were facially sufficient, so we will not disturb those findings without something more.

RGV also latches on to the word "prove" in K.S.A. 2020 Supp. 44-523(f)(2) and submits White failed to sufficiently establish his reasons for the delay because he relied on the representations of his lawyer to the administrative law judge and did not offer testimony or documentary evidence at the hearing. The argument is untenable. RGV has only now on appeal objected to the quality of what White offered in support of the requested extension. RGV lodged no such contemporaneous objection with the administrative law judge. Nor did it argue then that the representations were substantially incorrect or legally insufficient. Through its inaction at the hearing level, RGV waived or forfeited the argument. To credit the argument now we would endorse an unacceptable form of sandbagging. See *Finnegan v. Commissioner of Internal Revenue*, 926 F.3d 1261, 1272-73 (11th Cir. 2019) (characterizing raising new argument on appeal as sandbagging and declining to consider argument); *Raich v. Gonzales*, 500 F.3d 850, 868 & n.18 (9th Cir. 2007).

Moreover, White's representations to the administrative law judge about the discovery disputes and resulting delays were corroborated through the motions and other papers the parties submitted in litigating those disputes. The administrative law judge and the Board are not bound by "technical rules of procedure" or strict adherence to the rules of evidence with aim of affording the parties a reasonable opportunity to be heard and a

16

fundamentally fair hearing. K.S.A. 2020 Supp. 44-523(a); *Chriestenson v. Russell Stover Candies*, 46 Kan. App. 2d 453, 460, 263 P.3d 821 (2011) (rules of evidence not strictly applied in workers compensation proceedings). Under the circumstances, the administrative law judge properly relied on the representations of White's lawyer, especially in the absence of an objection from RGV, and the materials filed in the case. See *In re K.H.*, 56 Kan. App. 2d 1135, 1141, 444 P.3d 354 (2019) (court may take judicial notice of its own records in given case).

RGV has failed to present grounds warranting reversal of the administrative law judge and the Board on the extension granted White under K.S.A. 2020 Supp. 44-523(f)(2).

*Conclusion*

RGV has failed to show the Board erred in finding it to be a statutory employer of White. Requiring RGV to respond to White's claim for benefits does not offend fundamental due process considerations for personal jurisdiction, particularly given the purpose of the Workers Compensation Act and RGV's direct solicitation of a Kansas company to do labor-intensive work in Texas. Finally, White satisfied the good-faith requirement justifying the delay in these proceedings consistent with K.S.A. 2020 Supp. 44-523(f)(2).

We, therefore, affirm the Board and remand for further proceedings consistent with this opinion.