FILED
United States Court of Appeals
Tenth Circuit

January 24, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DENNIS ZAMORA,

Plaintiff–Appellant,

v.

BOARD OF EDUCATION FOR THE
LAS CRUCES PUBLIC SCHOOLS,

Defendant–Appellee.

No. 13-2097
(D.C. No. 2:12-CV-00550-MCA-CG)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

Dennis Zamora appeals from a district court order granting summary judgment

in favor of the Board of Education for the Las Cruces Public Schools (the "Board")

on his claims of national origin discrimination, hostile work environment, and

wrongful termination under 42 U.S.C. § 2000e-5 ("Title VII").  We have jurisdiction

under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Zamora worked for the Las Cruces Public Schools (the "School District") from 1994 until 2011 when his contract was not renewed. In late 2009, Zamora was working in an administrative capacity as a coordinator of several federal, state, and private programs when he was tasked with supervising employees with whom he had not previously worked. In May 2010, an employee wrote a report that was critical of Zamora's leadership and management style. And in September 2010, two employees filed reports against Zamora alleging sexual harassment, intimidation, and bullying. The School District's assistant director of human resources conducted an internal investigation and determined that Zamora may have been creating a hostile work environment.

In December 2010, an employee met with Superintendent Stan Rounds to complain of Zamora's harsh conduct and sexual harassment. Superintendent Rounds placed Zamora on paid administrative leave in early January 2011, pending the outcome of an investigation. He turned the matter over to the Board's law firm, which in turn hired June Romero to conduct an investigation. Romero interviewed Zamora and sixteen other individuals. She also reviewed documents and correspondence that she requested from the School District.

Four witnesses provided positive comments about Zamora; twelve witnesses had negative comments. On the positive side, Zamora's direct supervisor described him as a "change leader who rolls with the punches." She believed the complaints

were nothing more than "push[] back" from employees who were unhappy with his efforts to implement changes. A family educator said that she never had any difficulties with Zamora and a social worker echoed that opinion. A family facilitator also spoke in positive terms about Zamora and denied that he either awarded or allowed her to take compensatory time.

The other twelve witnesses painted a very different picture. They described insults, rudeness, intimidation, and unequal treatment. Romero wrote that there was "ample evidence from which to draw conclusions that a hostile work environment existed." Moreover, Romero's investigation uncovered evidence that Zamora was sexually harassing his female employees and that in one case an employee who refused his advances was treated less favorably and not rehired. Several witnesses who reported sexual improprieties believed that Zamora retaliated against them when they refused his overtures. The investigation also revealed that Zamora had violated the Board's policy regarding compensatory time.

After reviewing Romero's report, Superintendent Rounds concluded that Zamora had violated the Board's policies, specifically the prohibitions against sexual harassment and awarding compensatory time without approval. In a March 9, 2011, letter, Superintendent Rounds informed Zamora that his employment would be terminated effective June 30, 2011, when his "current employment contract terminates under its own terms." The three-page letter also outlined the results of the investigation.

Superintendent Rounds noted that Zamora had exhibited favoritism and failed to maintain a professional demeanor in his interactions with subordinates. He also noted "[t]he evidence . . . reveals that you favored certain members of your staff over others with a correlation being made that the differences in your treatment fell along lines of age and attractiveness related to your female staff." In particular, Superintendent Rounds wrote that he "found [the witnesses'] allegations of [sexual harassment and retaliation] to be credible and substantiated by other employees and supporting evidence . . . [and] sufficient evidence that you awarded compensatory time to your employees without my permission."

Zamora filed suit against the Board under Title VII. The district court determined that Zamora met his burden to establish a prima facie case of discrimination and that the Board articulated a legitimate, nondiscriminatory reason for terminating his employment.[1] It concluded that Zamora failed to offer evidence sufficient to create a genuine issue of material fact as to whether the stated reasons for terminating his employment were a pretext for discrimination, and therefore granted the Board's motion for summary judgment. Zamora timely appealed.

---

[1] Zamora also pled a claim for hostile work environment but did not argue this claim in the district court on summary judgment nor does he argue the issue in this court on appeal.

- 4 -

## II

"We review a district court's decision granting summary judgment de novo, resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party." Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To prevail on his racial discrimination claim, Zamora must make out a prima facie case by showing: "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." Salguero v. City of Clovis, 366 F.3d 1168, 1175 (10th Cir. 2004). If he does so, the burden shifts to the Board "to articulate a legitimate, nondiscriminatory reason for the termination that is not facially prohibited by Title VII." Id. (quotation omitted). If the Board satisfies this standard, the burden shifts back to Zamora to provide evidence showing that the Board's "proffered reasons are a pretext for racial discrimination." Id.

As did the district court, we conclude that Zamora made a prima facie showing of discrimination. He is an Hispanic man who was qualified for his job and was performing it in a satisfactory manner prior to the events at issue. And Zamora presented evidence from his direct supervisor concerning her belief that Superintendent Rounds overlooked her and another qualified Hispanic woman for

- 5 -

promotion. This evidence was sufficient to satisfy Zamora's "de minimis prima facie burden." Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005).

We also agree with the district court that the Board articulated a legitimate, nondiscriminatory reason for Zamora's termination. In the March 2011 letter, Superintendent Rounds outlined the findings and conclusions contained in Romero's report and explained that Zamora's conduct violated the Board's policies regarding sexual harassment and compensatory time. See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191 (10th Cir. 2000) (holding that "[t]he defendant's burden at this stage is one of production, not one of persuasion").

Zamora argues that the Romero report was hearsay within hearsay and should not have been considered by the district court. See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Zamora contends that the report is itself hearsay, and that it contains hearsay statements made by his accusers. "We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." Argo, 452 F.3d at 1199. "Under this standard, a trial court's decision will not be reversed unless [this court] has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005) (quotation omitted).

Setting aside the fact that several of the witnesses interviewed by Romero provided affidavits attesting to their personal knowledge and the accuracy of the facts stated in the report, the report itself was not hearsay. Hearsay is a statement, other than one made by the declarant at trial or a hearing, that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Hearsay evidence is not admissible at trial unless it falls under an exception. See Fed. R. Evid. 802.

The report is not hearsay because the Board offered it to establish the effect it had on Superintendent Rounds' state of mind when he made the decision to terminate Zamora. In other words, the report was not offered to prove that Zamora did in fact sexually harass some employees or violate other policies; instead, the report was offered to demonstrate that Superintendent Rounds believed there were legitimate reasons for his decision to terminate Zamora's contract. Because the report is not hearsay, it was properly considered by the district court. See Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993) (holding that statements "offered to establish [defendant's] state of mind in making [an employment] decision[] and . . . not offered for the truth of the matter asserted" are not hearsay).

We thus turn to pretext. "To show that the defendant's proffered race-neutral reasons were actually a pretext for discrimination . . . the plaintiff must demonstrate that the defendant's proffered race-neutral reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons

were unworthy of belief." Young v. Dillon Cos., 468 F.3d 1243, 1250 (10th Cir. 2006) (quotation and alteration omitted). "[I]f a plaintiff presents evidence that the defendant's proffered reason for the employment decision was pretextual . . . the plaintiff can withstand a summary judgment motion and is entitled to go to trial." Kendrick v. Penske Transp. Servs., 220 F.3d 1220, 1230 (10th Cir. 2000) (quotation omitted). Evidence of pretext "may take a variety of forms," and "[a] plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual." Id. (quotation and alteration omitted).

"[I]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Young, 468 F.3d at 1250 (quotation omitted). In drawing such an inference, "the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions." Id. (quotation omitted).

Zamora attempts to show pretext in several ways.[2] First, he argues that the complaining witnesses were dishonest and states that he followed the School District's rules and policies. However, Zamora's beliefs about his own performance are irrelevant. "[T]he relevant falsity inquiry is whether the employer's stated

---

[2] We discuss only those arguments for which there is at least some evidence in the record and not those that are based on Zamora's unsupported opinions and conjecture. For example, he complains about the lack of a "due cause hearing . . . and any progressive discipline." However, he cites no evidence suggesting he was entitled to such process.

reasons were held in good faith at the time of the [adverse employment action], even if they later prove to be untrue." Id. (quotation omitted). As we have explained, even if the employer's "beliefs . . . were wrong, [that] do[es] not suggest those beliefs were held in bad faith." Id. at 1251.

Second, Zamora contends that Romero's investigation was a one-sided effort in which she sought out numerous witnesses to complain about his behavior, and that Romero was biased because of an alleged close personal relationship with Superintendent Rounds. The record evidence belies Zamora's assertion of a one-sided investigation. Romero interviewed several witnesses who had positive comments about Zamora and included those remarks in the report. Moreover, the record does not support Zamora's claim of a close personal relationship between Romero and Superintendent Rounds. Superintendent Rounds testified that he knew Romero "[t]hrough counsel as an investigator, and through [his] profession of superintendent of schools of New Mexico over the time period from 1983 forward." The fact that he knew Romero as a child and "rediscovered her in her professional role," has no bearing on the issue of pretext. Zamora does not argue that Romero was racially biased, which might suggest liability under a cat's paw theory. See, e.g., Young, 468 F.3d at 1253 (discussing cat's paw theory).

Zamora next attempts to prove pretext by demonstrating that the outcome of the investigation was a foregone conclusion. He testified in his deposition that in January 2011, Superintendent Rounds told him that he was going to "get rid of

[him]," and that beginning in May 2010 the School District pressured him to resign or accept a different position. Whether Zamora was encouraged to resign or accept a different position in May 2010, when complaints about his management style surfaced, does not call into question the Board's legitimate reasons for declining to renew his employment contract in March 2011. The same is true regarding Zamora's belief that Superintendent Rounds had decided to fire him in January 2011. The evidence is that Zamora was not terminated until March 2011, following the investigation. More to the point, this testimony does not create a genuine issue of material fact concerning Superintendent Rounds' good-faith reliance on Romero's report as grounds for termination.

Lastly, Zamora argues that pretext can be inferred because it is "common knowledge" that Superintendent Rounds is racist. Zamora points to: (1) comments allegedly made by Superintendent Rounds that New Mexico's Governor (an Hispanic woman) is inept; (2) Rounds' hiring a man who had authorized a social experiment at a New Mexico high school that gave the appearance of race discrimination; (3) the reassignment of Zamora's duties in 2007 and 2008 to Caucasians; and (4) comments made by two co-workers in conversations surreptitiously recorded by Zamora following his termination in which they opined that Superintendent Rounds had engaged in racially discriminatory practices.[3] To establish pretext from such

---

[3] These co-workers later backed away from their statements. One explained that he was complaining about his boss and was trying to provide emotional support

(continued)

comments or actions, Zamora must tie them to his termination, which he has not done.  See Johnson v. Weld Cnty., 594 F.3d 1202, 1213 (10th Cir. 2010) (holding that "[w]ithout any meaningful connection, in either time or topic, to the [employment decision, the alleged comments and actions] cannot give rise to an inference that the [defendant's] explanation for that decision is pretextual").

## III

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

to Zamora; the other explained her comments as describing a "flaw in the system" that could create an appearance of discrimination.