NOT DESIGNATED FOR PUBLICATION

No. 117,336

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AYAAN M. KULMIYE,
*Appellant*,

v.

TYSON FRESH MEATS, INC.,
*Appellee*.


MEMORANDUM OPINION


Appeal from Workers Compensation Board. Opinion filed October 27, 2017. Affirmed.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellant.

*Gregory D. Worth* and *Danielle R. Augustine*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.


Before POWELL, P.J., MALONE, J., and LORI A. BOLTON FLEMING, District Judge, assigned.

PER CURIAM:  Ayaan M. Kulmiye was injured on August 26, 2013, while working at Tyson Fresh Meats, Inc. (Tyson). After filing her workers compensation claim, Kulmiye was provided with medical treatment. She eventually returned to work and for over a year continued to perform the same job duties she had prior to her injury. Kulmiye was terminated from her employment at Tyson on November 25, 2014, due to fighting with a coworker.

1

After a final hearing, the administrative law judge (ALJ) entered an award and found Kulmiye suffered a 9% permanent partial impairment to the body as a whole, entitling her to 37.35 weeks of permanent partial disability compensation at the rate of $315.52 per week, or a lump sum of $11,784.67. The ALJ further found Kulmiye was fired as a result of a fight with a coworker. The ALJ determined Kulmiye was entitled to unauthorized medical treatment not to exceed $500 and to future medical treatment in the form of pain management upon application to and approval by the Director of Workers Compensation. The ALJ also found that Kulmiye's wage loss was not attributable to her work injury and that she was not entitled to work disability.

Kulmiye applied for review by the Kansas Workers Compensation Board (Board) on October 19, 2016. She argued in her application that the award was contrary to the evidence that was presented and the record and that she was entitled to a task loss of not less than 66.667%, or $60,484.02.

On February 23, 2017, the Board found Kulmiye's termination was in good faith and was not a pretext to avoid paying her work disability award. The Board also found the statements made by coworkers with regard to Tyson's investigation of the fight between Kulmiye and her coworker qualified as a hearsay exception. Last, the Board found there was no error in the ALJ's award regarding future medical treatment.

Kulmiye appeals the findings of the Board, arguing (1) she was wrongfully terminated; (2) she should have been found at 100% work loss; and (3) the Board erred when it considered hearsay statements. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Kulmiye was injured while working at Tyson on August 26, 2013. She was pushing heavy boxes when she felt pain in her low back. Three days later, the pain went into her hips and legs. She informed Tyson and was sent to the nurse.

From October 8, 2013, to March 25, 2014, Kulmiye was seen by Dr. Terry Hunsberger, a doctor of osteopathy. At their first visit in October, Dr. Hunsberger tested Kulmiye's deep tendon reflexes and strength in her lower extremities, both of which were normal. He diagnosed Kulmiye with tendonitis in the low back and recommended prescription medication and modified work activity.

On October 22, 2013, Kulmiye saw Dr. Hunsberger; at that time, he thought she had radiculopathy and ordered an MRI. He maintained the recommendation of modified work activity. At this visit, an x-ray was taken which showed Kulmiye had a normal lumbar spine.

On November 11, 2013, Kulmiye returned and stated she had pain in her lower back and left leg. At that time, her MRI was unremarkable and her strength tested normal. Given that her strength was normal, her MRI was normal, and her deep tendon testing was normal, Dr. Hunsberger did not think Kulmiye had true radiculopathy. As a result of this visit, Dr. Hunsberger felt Kulmiye had reached the point of maximum medical improvement for the back injury sustained while working at Tyson and returned her to regular duty without limitations.

Kulmiye returned to Dr. Hunsberger on March 25, 2014, with complaints of low back pain. At that time, all of her tests were again normal. Because of her subjective reports of pain and the normal tests, Hunsberger recommended she see a pain specialist. It appears she continued with treatment for some time.

Dr. Pedro Murati read information into the record regarding Kulmiye's treatment with Dr. Bell Razafindrabe from April 30, 2014, to November 19, 2014. At their first visit, she was diagnosed with left L5 radiculitis; muscle spasm; and lumbar degenerative disc disease. Treatment options were discussed, including epidural injections, physical therapy, and surgery. It was recommended Kulmiye return to work with restrictions. In October 2014, Dr. Razafindrabe performed a lumber spine discography. At their last meeting in November 2014, Dr. Razafindrabe recommended Kulmiye have surgery on her lumbar spine.

On February 4, 2015, Kulmiye saw Dr. Murati, who conducted an independent medical evaluation. Her complaint to Dr. Murati was low back pain that went down both legs; bilateral hip pain; increased back pain with standing, sitting, and walking; numbness and tingling in toes on left foot; and difficulty sleeping due to low back pain. Dr. Murati evaluated Kulmiye and examined all of the previous doctors' notes. Dr. Murati found that during an 8-hour work day, Kulmiye should not bend, crouch, stoop, or crawl; should not lift, carry, push, or pull anything greater than 20 pounds, and even then only occasionally; should rarely use stairs or ladders or squat; should only occasionally sit and drive; could frequently stand and walk; and should alternate sitting, standing, and walking. He determined she had a 10% whole person impairment and believed she would be a good surgical candidate, and she had a 67% job task loss.

Kulmiye was then seen on July 21, 2015, by Dr. John Estivo, an orthopedic surgeon. Dr. Estivo examined the MRI film taken by Dr. Hunsberger and saw some mild bulging discs but no acute abnormalities. Dr. Estivo did a straight leg test for radiculopathy, a deep tendon reflexes test, a strength test, and a range of motion test. All tests came back normal. Dr. Estivo found Kulmiye had a lumbar spine strain and left hip bursitis for a combined 8% whole person impairment. Dr. Estivo found no work restrictions were necessary, and he did not believe Kulmiye was a surgical candidate.

For over a year following her injury, Kulmiye continued to perform the same job duties she had prior to her injury. She stated at the final hearing that she stood for most of her shift, with the exception of occasional periods when she would walk around.

Kulmiye was interviewed by Doug Lindahl, a vocational rehabilitation counselor, on June 5, 2015. Lindahl testified the only restriction statement he had at the time he made his report was from Dr. Murati. Based on Dr. Murati's report, there was no work available to Kulmiye within the restrictions he recommended. Lindahl then testified, based on the opinion of Dr. Estivo, Kulmiye would not sustain any loss in her ability to earn a wage. If Dr. Estivo's report were relied upon, Kulmiye would be able to return to Tyson in addition to other jobs in the open labor market.

On October 27, 2015, Kulmiye was interviewed by Steve Benjamin, a vocational expert. Benjamin determined that based on the reports from Dr. Hunsberger and Dr. Estivo, Kulmiye did not have any limitations or work restrictions and no task loss. However, based on Dr. Murati's report, Kulmiye would not be able to reenter the work force, resulting in a 66.7% task loss. Ultimately, Benjamin found 13 job positions available for which Kulmiye would have qualifications and the ability to perform. Kulmiye had not applied to any job positions since her last day at Tyson.

Kulmiye was terminated from her employment at Tyson on November 25, 2014, for fighting with a coworker, which was in violation of Tyson's rules of conduct. At the hearing, Kulmiye admitted she was advised of Tyson's rules of conduct, including that fighting with another team member would be grounds for termination of employment.

Kulmiye stated the fight began when a team member was angry with her and picked up ground meat and threw it in her face. Kulmiye said she was going to go to the office, but the team member started calling her bad names and then hit her in the face. Kulmiye claimed the team member started to kick her, and Kulmiye pushed the team

member. When Kulmiye was asked at the hearing if she hit the team member, she said yes.

Barbara Larsen, the human resources manager at Tyson and a custodian of the personnel files, produced documents showing that Kulmiye had signed and initialed the rules of conduct from Tyson as a condition to her employment and had been informed of Tyson's policy on fighting with another team member. Larsen also took statements and documents that were prepared at or about the time of the events, including a written statement after the fight in which Kulmiye acknowledged she was involved in a fight with a coworker.

On October 14, 2016, the ALJ entered an award and found Kulmiye suffered a 9% permanent partial impairment to the body as a whole as a result of her injury arising out of and in the course of her employment. He further found Kulmiye was fired as a result of a fight between Kulmiye and a coworker. She was injured in August 2013 and was employed for more than a year after her injury until she was terminated. The ALJ found that Kulmiye's wage loss was not attributed to her work injury and that she was not entitled to a work disability award. The ALJ determined Kulmiye was entitled to unauthorized medical treatment not to exceed $500 and was entitled to future medical treatment in the form of pain management upon application to and approval by the Director of Workers Compensation. Last, the ALJ calculated Kulmiye was entitled to 37.35 weeks of permanent partial disability compensation at the rate of $315.52 per week, or a lump sum of $11,784.67, for the 9% permanent partial disability to the body as a whole.

Kulmiye applied for review by the Board on October 19, 2016. She argued in her application that the award was contrary to the evidence that was presented and the record and that she was entitled to a task loss of not less than 66.667%, or $60,484.02.

The Board heard oral arguments on February 9, 2017, and issued its order on February 23, 2017. The Board found Kulmiye was terminated for cause and, given all of the circumstances to justify her termination, her termination was reasonable and not arbitrary, capricious, unjustified, or discriminatory. The Board stated her termination was in good faith and was not a pretext to avoid paying workers compensation benefits. It further found Tyson conducted a proper investigation into the circumstances leading to Kulmiye's termination, noting that Tyson interviewed several witnesses and did not rush to a judgment. The Board did not decide whether the statements made by coworkers qualified as a hearsay exception as records kept in the ordinary course of business but did find that the records were an exception to hearsay. Last, the Board found there was no error in the ALJ's award regarding future medical treatment.

Kulmiye appeals. On appeal, she argues she was wrongfully terminated, she should have been found at 100% work loss, and the Board erred when it considered hearsay statements.

DOES SUBSTANTIAL EVIDENCE SUPPORT THE BOARD'S FINDING THAT KULMIYE WAS TERMINATED FOR JUSTIFIABLE REASONS UNRELATED TO THE WORKPLACE INJURY?

K.S.A. 2016 Supp. 44-556(a) directs that final orders of the Board are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The standard of review will vary depending upon the issue raised. See K.S.A. 2016 Supp. 77-621 (defining and limiting scope of review of administrative decisions under KJRA).

An appellate court's review of questions of fact in a workers compensation case is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported by substantial evidence, which is a question of law. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007). "An appellate court reviews the evidence in a light most favorable to the prevailing party without reweighing the

evidence or redetermining the credibility of witnesses. We will uphold the Board's findings even though there is evidence in the record to support contrary findings." 283 Kan. at 514-15.

When determining fact questions, we review whether "the Board's factual findings . . . are supported by substantial evidence. Substantial evidence is 'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.' [Citations omitted.]" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015). The substantial evidence analysis requires the court to "(1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh the evidence or engage in de novo review. [Citations omitted.]" *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

Reviewing "in light of the record as a whole" is statutorily defined as

"the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact." K.S.A. 2016 Supp. 77-621(d).

Kulmiye argues she was not terminated for cause; she was not fighting at work but was trying to extricate herself from the situation so she could seek assistance. In addition, she argues Tyson did not act in good faith. Tyson argues there was substantial and

competent evidence to support the Board's findings that Kulmiye was terminated for cause; that she was aware of and understood Tyson's policy regarding fighting at work; and that she gave a statement to Tyson following the fight confirming she was an active participant in the fight. In addition, Tyson argues the timing of the termination supports that Kulmiye was justifiably terminated as she continued to work following her injury in accommodating positions and was fired 15 months later when she violated Tyson's policy. Therefore, Tyson argues she was not terminated based on her workers compensation claim or in an attempt to avoid being paid workers compensation benefits. Tyson's arguments are persuasive.

The Kansas Workers Compensation Act, K.S.A. 44-501 et seq., does not define the term "for cause." See K.S.A. 2016 Supp. 44-508. However, *Morales-Chavarin v. National Beef Packing Co.*, No. 95,261, 2006 WL 2265205, at *5 (Kan. App. 2006) (unpublished opinion), explains that "the proper inquiry to make when examining whether good cause existed for termination in a workers compensation case is whether the termination was reasonable, given all of the circumstances." Circumstances to consider are whether the employee made a good faith effort to maintain employment, whether the employer exercised good faith, and whether the employer's reason for termination is a subterfuge to avoid paying disability. 2006 WL 2265205, at *5.

The timing of Kulmiye's termination supports that she was justifiably terminated. Kulmiye was injured on August 26, 2013, and was terminated on November 2, 2014. During the time between those dates, she continued to work at Tyson with either modified or limited work duties. This shows that Tyson did not terminate Kulmiye in an effort to avoid paying disability, as she was employed for another 15 months before her termination.

Kulmiye was terminated for violating Tyson's policy on fighting at work, which is supported by substantial evidence. Kulmiye signed and initialed the rules of conduct from

9

Tyson, which stated Tyson's policy on fighting with another team member. In addition, Kulmiye admitted to hitting another employee. Given Kulmiye signed Tyson's rules of conduct and Kulmiye admitted to violating those rules, it is clear her termination was reasonable and Tyson acted in good faith. See *Morales-Chavarin*, 2006 WL 2265205, at *5. It is also notable that Kulmiye's coworker involved in the fight was likewise terminated. The Board's finding that Kulmiye was terminated for cause is clearly supported by substantial competent evidence.

SHOULD THE BOARD HAVE FOUND KULMIYE SUFFERED A 100% WORK LOSS?

An appellate court's review of questions of fact in a workers compensation case is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported by substantial evidence, which is a question of law. *Casco*, 283 Kan. at 514. As previously stated, we review "the evidence in a light most favorable to the prevailing party without reweighing the evidence or redetermining the credibility of witnesses [and] will uphold the Board's findings even though there is evidence in the record to support contrary findings." 283 Kan. at 514-15.

Under K.S.A. 2016 Supp. 44-510e(a)(2)(C)(i), an injured worker is entitled to work disability if the percentage of functional impairment caused by the injury exceeds 7 1/2% to the body as a result of the work accident or the overall functional impairment is equal to or exceeds 10% with a preexisting functional impairment. The wage loss is determined to be "the difference between the average weekly wage the employee was earning at the time of the injury and the average weekly wage the employee is capable of earning after the injury." K.S.A. 2016 Supp. 44-510e(a)(2)(E). However, "[w]age loss caused by voluntary resignation or termination for cause shall in no way be construed to be caused by the injury." K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i).

10

Kulmiye argues she is entitled to a finding that she has a 100% work loss. The ALJ found she suffered a 9% permanent partial impairment to the body as a whole. The ALJ further awarded her 37.35 weeks of permanent partial disability compensation at the rate of $315.52 per week, or a lump sum of $11,784.67.

The findings of the Board were based on substantial evidence. Kulmiye was seen by four different doctors, three of whom found she could either work without limitations or with restrictions. Only Dr. Murati found Kulmiye should not bend, crouch, stoop, or crawl; should not lift, carry, push, or pull anything greater than 20 pounds, and even then only occasionally; should rarely use stairs or ladders or squat; should only occasionally sit and drive; could frequently stand and walk; and should alternate sitting, standing, and walking. Additionally, both Lindahl and Benjamin, vocational specialists, testified that except for the report of Dr. Murati, all doctor reports supported the opinion that Kulmiye could return to work at Tyson in addition to other jobs in the open labor market. In fact, Benjamin found 13 job positions available Kulmiye would be qualified for and able to perform. Kulmiye had not applied for any job since her last day at Tyson.

In addition, Kulmiye continued to perform the same job duties she had prior to her surgery for over a year. She stood for most of her shift with the exception of the occasional periods when she would walk around.

Based on the evidence from the doctors and vocational experts, as well as Kulmiye's continued work performance after her injury, the Board had substantial evidence to find Kulmiye did not suffer a 100% work loss.

## DID THE BOARD APPROPRIATELY CONSIDER EVIDENCE WHEN DETERMINING KULMIYE WAS TERMINATED FOR CAUSE?

Kulmiye argues the written statements taken from witnesses are hearsay and should not have been considered by the ALJ or by the Board. Tyson argues hearsay statements resulting from an investigation may properly form the basis for an employer to terminate an employee.

When the question of whether a district court complied with specific statutory requirements for admitting evidence requires interpretation of a statute, appellate review is de novo. See *Schlaikjer v. Kaplan*, 296 Kan. 456, 463-64, 293 P.3d 155 (2013). We are also mindful that the technical rules of evidence in civil cases are not applicable in workers compensation proceedings. See *Chriestenson v. Russell Stover Candies*, 46 Kan. App. 2d 453, 460, 263 P.3d 821 (2011), *rev. denied* 294 Kan. 943 (2012). "[S]trict rules of evidence are not applicable in workers compensation proceedings, and hearsay evidence may be permitted and considered by the finder of fact." *Francis v. IBP, Inc.*, No. 75,904, unpublished opinion filed June 27, 1997, slip. op. at 11.

The witness statements are admissible under the reasoning from the 10th Circuit Court of Appeals in *Zamora v. Board of Education for Las Cruces Public Schools*, 553 Fed. Appx. 786 (10th Cir. 2014) (unpublished opinion). In *Zamora*, evidence was submitted regarding the claimant's termination, and the claimant argued the evidence should not have been considered because it was hearsay within hearsay. The 10th Circuit held the evidence was not hearsay because it was offered to demonstrate the employer's belief of legitimate reasons supporting the decision to terminate Zamora, not to prove that Zamora violated any policies. 553 Fed. Appx. at 790; see also *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) (holding that statements offered to establish state of mind in making employment decision and not offered for truth of matter asserted are not hearsay).

Here, the Board determined Tyson conducted a proper investigation and interviewed several witnesses and, therefore, did not rush to judgment when it terminated Kulmiye. As in *Zamora*, the witness statements were presented to demonstrate that a reasonable investigation was conducted, not to prove the truth of the matter asserted. Therefore, the statements are not hearsay.

Even if the witness statements are hearsay, these statements are nonetheless independently admissible under K.S.A. 2016 Supp. 60-460(m) as a business record.

>  "The admission into evidence of business records falls within the exception to the hearsay rule governed by K.S.A. 60-460(m) which provides for the admission of 'writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness.'" *Olathe Ready-Mix Co., Inc. v. Frazier*, 220 Kan. 646, 646-47, 556 P.2d 198 (1976).

Here, the human resources manager—who is also a custodian of the personnel files—took the statements and prepared documents at or about the time of the events in the regular course of business. The statements were writings offered as records of acts and events, and the documents clearly fall under the K.S.A. 2016 Supp. 60-460(m) hearsay exception.

For all of these reasons, we find that the Board appropriately considered the statements of coworkers when it determined Kulmiye was terminated for cause.

Affirmed.